# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs May 3, 2016

## STATE OF TENNESSEE v. QUADARIUS DESHUN MARTIN

**Appeal from the Circuit Court for Madison County**
**No. 15135      Donald H. Allen, Judge**

---

**No. W2015-01095-CCA-R3-CD  -  Filed June 22, 2016**

---

The Defendant, Quadarius Deshun Martin, was convicted by a Madison County jury of two counts of aggravated assault, a Class C felony. See T.C.A. § 39-13-102. Following a sentencing hearing, the trial court imposed an effective sentence of five years in the Tennessee Department of Correction (TDOC). On appeal, the Defendant argues that the trial court misapplied the statutory enhancement and mitigation factors and improperly denied him an alternative sentence. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN and J. ROSS DYER, JJ., joined.

Daniel J. Taylor, Jackson, Tennessee, for the Defendant-Appellant, Quadarius Deshun Martin.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; James G. (Jerry) Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

On the evening of June 27 and early morning hours of June 28, 2014, the twenty-year-old victim, Clint Struder, and his friend, Jimmy Daniels, attended a party at the home of Terrell Ellison. The Defendant, age nineteen, was also at the party. Around 2:00 a.m., an altercation arose between the Defendant and the victim, for which the Defendant was subsequently indicted on two counts of aggravated robbery.

At trial, the victim testified that he and Daniels left the parking lot of the Walmart South in Jackson, Tennessee, and arrived at Ellison's house around 11:00 p.m. They stayed at Ellison's for approximately three hours, and the victim consumed "probably eight beers" during that time. As the victim was exiting the party, he saw the Defendant, whom he recognized from high school, outside near the street. The victim testified that the Defendant approached him outside of the house and that they got into an argument, but he could not remember what it was about. The Defendant then struck the victim in the side of the head with the butt of a black rifle and pushed him to the ground. The Defendant continued to strike him in the head while he was lying on the ground. At that point, two other partygoers, Brent Lambert and Kevin Lane-Mayse, also began hitting the victim in the head. The victim stated that the three men struck him between ten and twenty times.

The victim recalled that he was initially struck with the Defendant's gun and was then kicked in the head several times and struck on the head with a glass bottle. The victim did not know which of the three men hit him with the bottle but did recognize Lane-Mayse as the man who kicked him. During the attack, Lambert grabbed the victim's wallet, which contained $170 cash, from the victim's back pocket. The victim's cell phone was also taken during the attack, which lasted about five minutes. The victim testified that the altercation came to a sudden stop and that Lambert and Lane-Mayse drove off with his belongings but that the Defendant remained standing outside his house across the road from the party. He said that he walked over to the Defendant and that the Defendant apologized to him for the robbery. Daniels then drove the victim home in the victim's truck. When the victim's parents saw the back of his head, they told him he needed to go to the hospital. His injuries required "fifteen to twenty staples" in two different places on his head for a period of three weeks. The victim did not know why he was attacked and did not remember hitting anyone before the Defendant first struck him.

On cross-examination, the victim testified that he did not remember drinking at the Walmart parking lot before the party. However, he admitted that he could not recall everything from the night of the offense partly because of the amount of alcohol he had consumed. He could not recall whether he had seen the Defendant before or during the party. He recalled that Daniels and one other person he did not recognize were going through his truck while he was being attacked. The victim did not know whether his phone was taken from inside his truck or from his pocket. Finally, the victim estimated that the Defendant had pointed his gun at him for twenty to thirty seconds before striking him with it.

Tawny Harris, a friend of Ellison's, testified that on the evening of the offense, she, Ellison, Lambert, and Lane-Mayse hung out in the parking lot of Walmart South in Jackson from 8:00 until 11:00 p.m. She said that the victim and Daniels were also

present and that everybody, including the victim, was drinking. At around 11:00 p.m., Harris, Ellison, Lane-Mayse, and Lambert left to go to Ellison's "new house" to continue drinking, and they eventually moved to Ellison's "old house" on Bayberry Street sometime after midnight. Harris said that the Defendant was at the new house but did not ride with them to the old house. However, when they arrived at the old house, the victim and Daniels were standing on the porch, and the Defendant was walking toward the house from down the street carrying a weapon that "looked like an army gun."

Harris testified that she and Ellison sat inside her car talking until they heard yelling from inside the house. When she walked inside the house, she saw the victim and the Defendant arguing. She then observed the Defendant hand his gun to someone, pick up a glass bottle, and strike the victim with it. She said that the victim attempted to fight back but eventually fell and that Lane-Mayse took keys from the victim's pocket while he was on the ground. The Defendant struck the victim with his fists "maybe twice" more before running out of the house. Harris observed the victim run outside after the Defendant yelling, at which point Lane-Mayse "c[a]me out of nowhere and knocked [the victim] over the head with another bottle[.]" She said that the Defendant, Lane-Mayse, and Lambert continued hitting the victim with their fists and that Lambert took the victim's wallet out of his back pocket while they were beating him. Harris did not remember seeing the Defendant talking to the victim outside Ellison's house; however, she confirmed her statement to law enforcement that the Defendant told the victim that he wanted his money. Harris said that the entire altercation lasted fifteen minutes. The last thing she recalled was that the victim asked for his keys and that Lane-Mayse and Lambert jumped into her backseat as she was leaving.

On cross-examination, Harris admitted that she had consumed at least eleven shots of alcohol, drank several beers, and smoked marijuana on the night of the offense. She said that Lane-Mayse and Lambert had also been smoking marijuana. Harris did not observe the victim smoking marijuana, but she did recall that "[the victim] did take quite a few Xanax when we were at Wal[mart]." She said that the victim was also drinking some kind of liquor from a water bottle. Harris denied seeing the Defendant strike the victim with a gun. She also clarified that the initial fight between the victim and the Defendant began in Ellison's house rather than outside. According to Harris, the victim had been lunging toward the Defendant ready to fight when the Defendant initially struck him with a bottle.

Harris further testified that the Defendant did not take anything from the victim during the altercation. She noted that the victim had been selling Xanax and flashing money and pills in the Walmart parking lot and that Lane-Mayse and Lambert were present at that time but that the Defendant was not. She also stated that she saw Daniels, Lane-Mayse, and Lambert going through the victim's truck during the initial altercation

inside the house. Harris also saw Lane-Mayse and Lambert attempting to sell the victim's phone later that night when they returned to Ellison's new house.

Patrol Officer Wesley Smith of the Jackson Police Department testified that he responded to a call at around 5:00 a.m. on June 28, 2014, regarding a reported assault. He went to the victim's house, and the victim informed him that he had also been robbed. Officer Smith observed a laceration on the back of the victim's head, and he accompanied the victim to the hospital to take a written statement. Jackson Police Investigator Ron Pugh met with the victim at the hospital on the morning of June 28, 2014, and confirmed the victim's injuries at trial.

Based on the foregoing evidence, the jury convicted the Defendant of two counts of the lesser-included offense of aggravated assault and imposed a $2,500 fine for each count. The trial court then set the matter for sentencing and a hearing took place on May 18, 2015.

**Sentencing Hearing.** At the hearing, the State entered the Defendant's presentence report into evidence but presented no additional proof. On behalf of the Defendant, twenty-year-old Addison Helms testified that she and the Defendant had been dating four years and that they had a six-week old son together. Helms verified that the Defendant had graduated from South Side High School and had previously worked at Sonic. She also confirmed that, at the time of his arrest, he was enrolled in a one-year HVAC program at Tennessee Technology Center in Jackson for certification in heating and air. Helms requested that the trial court sentence the Defendant to probation. The Defendant, who did not testify, stated, "I just wanted to apologize to the victim and his family for the incident that occurred and that's basically it." Moreover, during closing remarks, defense counsel introduced a notice of proposed mitigating factors, which was filed on May 18, 2015, and requested a fully probated sentence.

Following arguments from counsel, the trial court applied enhancement factors (1), that the Defendant had a previous history of criminal behavior; (2), that the Defendant was a leader in the commission of the offense; (5), that the Defendant treated or allowed the victim to be treated with exceptional cruelty; and (7), that the offense was committed to gratify the Defendant's desire for pleasure or excitement. See T.C.A. § 40-35-114(1)-(2), (5), (7). The court declined to apply any mitigation factors. After determining that the Defendant was a Range I, standard offender, the court imposed concurrent five-year sentences for each count of aggravated assault, for an effective sentence of five years in the TDOC with thirty percent release eligibility. The court further ordered that the Defendant pay $1,069 restitution. A timely motion for new trial was filed on June 10, 2015. During the pendency of this motion, the Defendant filed a

pro se notice of appeal on June 15, 2015. The motion for new trial was heard on June 29, 2015, and a written order denying the motion was issued August 3, 2015.

## ANALYSIS

On appeal, the Defendant challenges both the length and the manner of service of the sentence imposed by the trial court.[1] Specifically, he argues that "the trial court committed error in its finding of certain enhancement factors and its conclusion that no mitigating factors applied." Moreover, he asserts that the trial court abused its discretion by denying his request for probation. In response, the State contends that the Defendant's sentence was proper. Upon review, the record does not support the trial court's application of enhancement factor (7). However, we conclude that the Defendant's effective five-year sentence of incarceration was supported by the record as a whole.

The 2005 amendments to the Sentencing Act "served to increase the discretionary authority of trial courts in sentencing." State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012). In light of this broader discretion, "sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed." Id. at 706. Moreover, "a trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." Id. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld." Id. Therefore, this court reviews a trial court's sentencing determinations under "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707. The Defendant has the burden of showing the impropriety of the sentence on appeal. T.C.A. § 40-35-401(d), Sentencing Comm'n Cmts.

A trial court must consider the following when determining a defendant's specific sentence and the appropriate combination of sentencing alternatives: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Id. § 40-35-

---

[1] The issues have been reordered for clarity.

210(b)(1)-(7). In addition, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." Id. § 40-35-103(5). The court must impose a sentence "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Id. § 40-35-103(2), (4).

As Range I, standard offender, the Defendant was subject to a sentencing range of three to six years for each count of aggravated assault, a Class C felony. See T.C.A. § 40-35-112(a)(3). Thus, the trial court's sentences were within the statutory range. In determining the appropriate length of the Defendant's sentences, the trial court applied four enhancement factors. On appeal, the Defendant does not challenge the trial court's application of factor (1), that the Defendant had a previous history of criminal behavior, but asserts that factors (2), (5), and (7) were improperly applied. See T.C.A. § 40-35-114(1)-(2), (5), (7).

The Defendant argues that the court misapplied factor (2), that the Defendant was a leader in the commission of offenses involving two or more criminal actors, because "nothing was established that the Defendant commanded the co[]defendants to hit or take things from the victim during or after the fight." Upon review, we conclude that the record adequately supports the application of factor (2). Here, the Defendant arrived to Ellison's old house carrying a gun, and he and the victim got into an argument. The Defendant was the first person to strike the victim and, after the initial blow, the Defendant, as well as Lambert and Lane-Mayse, continued hitting the victim for several minutes while he was lying on the ground. At some point during the altercation, Lane-Mayse and Lambert took the victim's phone and money while the Defendant continued striking him. Although the Defendant notes that he remained at the scene and apologized to the victim for the robbery, he fails to demonstrate any legal basis for why this would render the application of factor (2) improper.

Next, citing State v. Arnett, 49 S.W.3d 250 (Tenn. 2001), the Defendant contends that the trial court misapplied enhancement factor (5), that the Defendant treated or allowed the victim to be treated with exceptional cruelty during the offense, because "the reasons stated by the trial court were inherent in the elements of the offense of aggravated assault." We disagree. As applied to the case at bar, the Defendant's aggravated assault conviction did not require a finding of "serious bodily injury." See T.C.A. § 39-13-102(a)(1)(A)(i), (iii). Therefore, the significant physical harm suffered by the victim was not inherent to the underlying offense and could be considered for enhancement purposes. In weighing this evidence, the trial court found that the Defendant exhibited exceptionally cruel behavior when he and two codefendants continued hitting the victim in the head for several minutes after he was initially knocked to the ground. Moreover,

the victim testified at trial that he was struck between ten and twenty times, which resulted in lacerations that required seventeen staples in his head. We therefore conclude that the record supports the trial court's determination that the Defendant's conduct went "over and above" that which was necessary to sustain his convictions. See Arnett, 49 S.W.3d at 258; see also State v. Williams, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995). Accordingly, the trial court did not err in applying enhancement factor (5).

However, we conclude that the trial court erred in its application of enhancement factor (7), that the offense was committed to gratify the Defendant's desire for pleasure or excitement. T.C.A. § 40-35-114(7). We acknowledge that while this factor is applied most often cases involving sexual offenses, it may be used to enhance sentences for non-sexual crimes. State v. Kissinger, 922 S.W.2d 482, 490-91 (Tenn. 1996) ("An offender who steals because of a pleasure experienced in 'not getting caught' . . . may have [his] sentence[] enhanced under factor (7)[.]"). However, we note that in determining whether factor (7) applies, "[t]he focus is the offender's motive, not the eventual result." Id. at 490. In the case at bar, the trial court found factor (7) to be applicable "because in the Court's opinion, this was really more of a setup to rob and to beat [the victim]."[2] We fail to see how this fact, even if true, would demonstrate that the Defendant acted out of a desire for pleasure or excitement. The victim testified at trial that he was intoxicated at the time of the offense, and he could not remember how the initial dispute arose or whether he struck the Defendant. Moreover, though the Defendant hit the victim multiples times, he did not physically remove any of the victim's property or attempt to abscond with the other assailants. Instead, the Defendant remained at the scene, apologized to the victim for the robbery, and attempted to call the men who took the victim's belongings. The State introduced no objective evidence supporting application of factor (7), and there was insufficient proof in the record to support that the Defendant's criminal conduct was motivated by a desire for pleasure or excitement above and beyond any offense for which he was charged or convicted. See State v. Robert James Yoreck, III, No. M2004-01289-CCA-RM-CD, 2003 WL 23613823, at *2-3 (Tenn. Crim. App. June 29, 2004) (citations omitted). Accordingly, enhancement factor (7) was applied in error. This error does not, however, require that the Defendant's sentence be reduced, as the record supports the remaining enhancement factors applied by the trial court. See Bise, 380 S.W.3d at 709 (upholding a mid-range sentence despite finding that the single enhancement factor had been improperly applied).

---

[2] Because the jury acquitted the Defendant of both aggravated robbery and facilitation of aggravated robbery, we are hesitant to speculate as to the extent of his involvement in the victim's robbery. However, we acknowledge that the trial court may properly base the application of an enhancement factor on facts underlying an offense for which the Defendant has been acquitted so long as such facts are adequately supported by the record. See State v. Winfield, 23 S.W.3d 279, 283 (Tenn. 2000) (citing State v. Pearson, 858 S.W.2d 879, 885 (Tenn. 1993)).

The Defendant also asserts that the trial court should have mitigated his sentences based on his youth, lack of criminal history, and potential for rehabilitation. See T.C.A. § 40-35-113(6), (13). The trial court considered the Defendant's age and work history but ultimately found no applicable mitigating factors. In so finding, the court reasoned,

> Now, as far as mitigating factors, I know the Defense has argued a couple of factors that -- number one: that the Defendant was a youthful offender, which certainly -- is true. He was, I believe, 19 years of age at the time that he committed this offense, but I don't find that he lacked substantial judgment in committing the offense. Even though he was young, 19, he certainly -- nothing to indicate that he lacked judgment in committing the offense.

> Again, as I said, [it] appears to the Court that this was really more of a setup to rob [the victim]. [The victim], because of his intoxicated state, was an easy target, became an easy victim of this robbery and this assault.

> So, I don't find any mitigating factors to be present in this case.

Upon review, we conclude that, although the record reflects that the Defendant was nineteen and enrolled in school at the time of the offense, he has not otherwise shown that his sentences are improper. We note that we are bound to the trial court's imposition of a within-range sentence that is otherwise consistent with the purposes and principles of the Sentencing Act, even if we would have preferred a different result. See Carter, 254 S.W.3d at 346.

Because the statutory enhancement and mitigating factors are advisory only, and because "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion[,]" we conclude that the trial court did not err in its sentencing determinations where the record otherwise supports the within-range sentences imposed. See T.C.A. § 40-35-114(c)(2) (2010); Carter, 254 S.W.3d at 345; see also Bise, 380 S.W.3d at 709. Here, the record supports the length of the sentences imposed by the trial court.

Finally, the Defendant maintains that the trial court abused its discretion by denying his request for an alternative sentence. Specifically, he contends that he was a favorable candidate for an alternative sentence based on his age, education and work history, family ties, and lack of a criminal record. Any sentence that does not involve complete confinement is an alternative sentence. See generally State v. Fields, 40 S.W.3d 435 (Tenn. 2001). In determining whether to deny alternative sentencing and impose a sentence of total confinement, the trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Id. § 40-35-103(1)(A)-(C); see also State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

A trial court's determination of whether the Defendant is entitled to an alternative sentence and whether the Defendant is a suitable candidate for full probation are different inquiries with different burdens of proof. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). "A defendant's sentence is based on 'the nature of the offense and the totality of the circumstances in which it was committed, including the defendant's background.'" State v. Trotter, 201 S.W.3d 651, 653 (Tenn. 2006) (quoting Ashby, 823 S.W.2d at 168). The seriousness of the offense alone may justify a trial court's denial of alternative sentencing. See Trotter, 201 S.W.3d at 655.

Here, the Defendant was eligible for probation because each sentence was ten years or less and because the offenses were not specifically excluded by statute. See T.C.A. § 40-35-303(a); State v. Langston, 708 S.W.2d 830, 832-33 (Tenn. 1986) (concluding that a defendant is eligible for probation if each of the sentences is ten years or less regardless of the effective sentence). However, an eligible defendant "is not automatically entitled to probation as a matter of law." Id. § 40-35-303(b), Sentencing Comm'n Cmts. Although the trial court shall automatically consider probation as a sentencing alternative for eligible defendants, the defendant bears the burden of proving his or her suitability for probation. Id. § 40-35-303(b). The Defendant must demonstrate that probation would serve "the ends of justice and the best interests of both the public and the defendant." State v. Souder, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (citations omitted). When considering probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, the defendant's present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public. State v. Kendrick, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999) (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978)). "[A] trial court's decision to grant or deny probation will not be invalidated unless the trial court wholly departed from the relevant statutory considerations in reaching its determination." State

-9-

v. Sihapanya, — S.W.3d — , No. W2012-00716-SC-R11-CD, 2014 WL 2466054, at *3 (Tenn. 2014).

In denying an alternative sentence, the trial court found that the facts surrounding the offense, as well as the nature of the Defendant's criminal conduct, weighed against probation based upon the Defendant's violent behavior and the severity of the victim's injuries. The court reasoned, "this is a very serious matter," and felt that an alternative sentence would unduly depreciate the seriousness of the offense. Moreover, despite the Defendant's lack of a criminal record, the trial court felt that incarceration was necessary to protect society from the Defendant's future criminal conduct. Regarding this factor, the court emphasized that the Defendant appeared to have no hesitation about beating the victim to a state of near unconsciousness, stating,

> [A]lso I find in this particular case, and this is really what's important to me as well, is that this Defendant had no hesitation about committing this crime. I mean, you know, it was almost like he enjoyed and got pleasure out of hitting somebody with a bottle in the back of the head, by striking them with the butt of a rifle, by kicking them and beating them for at least a five-minute period of time, rendering this man almost unconscious, sending him to the hospital.
>
> You know, and the reason I say this was a setup is because the testimony was that even after all this had taken place, the Defendant even apologized to the victim for robbing him and that's what the testimony was, that he said he's sorry that he got robbed. But, you know, again, I think the proof shows that this was really a setup by [the Defendant] and []his accomplices, Mr. Lambert and Mr. [Lane-Mayse]. It was really a setup to commit a robbery and, you know, I find based upon the proof presented, the jury felt like perhaps since [the Defendant] didn't take any property that he wasn't guilty of a robbery, even though these other individuals did take property from the victim.
>
> So, you know, based upon all those facts and circumstances, I find that the interests of society from being protected from this Defendant's future criminal conduct is great because, again he had no hesitation about committing this offense.

Based on the record as a whole, we cannot conclude that the trial court abused its discretion by denying the Defendant's request for probation. Although the Defendant contends that the trial court provided inadequate support for its imposition of full confinement, the record reflects that trial court analyzed the propriety of an alternative

sentence in light of the circumstances of the Defendant's case. In reaching its sentencing decision, the trial court considered the evidence, the enhancement and mitigating factors, and the purposes and principles of sentencing prior to imposing a within-range sentence of five years' confinement. As such, the Defendant has failed "to either establish an abuse of discretion or otherwise overcome the presumption of reasonableness afforded" to the trial court's sentence. Caudle, 388 S.W.3d at 280. Accordingly, he is not entitled to relief.

## CONCLUSION

Based on the foregoing authority and analysis, we affirm the judgments of the trial court.

_____
CAMILLE R. McMULLEN, JUDGE